# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THERESE CRUZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-1107-EFM-TJJ |
| | ) | |
| AMERICAN NATIONAL RED CROSS, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion to Compel (ECF No. 26). Plaintiff asks the Court to compel Defendant The American National Red Cross ("Red Cross") to answer certain interrogatories without objection. As set forth below, the Court denies Plaintiff's motion.

### I.     **Relevant Background**

Plaintiff served her First Set of Interrogatories to Red Cross on September 18, 2019. On October 21, 2019, Defendant Red Cross served its answers and objections. The following day, Plaintiff's counsel sent a letter to defense counsel taking issue with objections posed to the interrogatories. The parties traded additional correspondence before and after they discussed the issues by telephone on November 6, 2019. Plaintiff timely filed the instant motion.

The Court finds that the parties have conferred in attempts to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.

### II.    **Specific Discovery Requests at Issue**

Plaintiff asks the Court to compel Defendant to provide additional answers to eight

interrogatories[1] and to withdraw its objections to those interrogatories. Although Plaintiff does not ask the Court to rule on Defendant's objections, the Court considers it necessary to rule on a responding party's objections when deciding a motion to compel.

Federal law requires the Red Cross to maintain records of complaints of adverse reactions from blood collections or transfusions. Consistent with that obligation, Red Cross maintains a Donor Complication and Injury Record (DCIR) for blood drive staff to use in recording information about complications. The DCIR includes a section for "Incident Description" where staff document a donor's symptoms by checking one or more of the 35 boxes for various symptoms. Elsewhere on the form a "Final Complication Code" is entered. According to a declaration by Beth Dy, the Hemovigilance Manager at the Red Cross who is responsible for compiling, monitoring, and reporting systemic donor complication rates and recipient adverse reactions, the Red Cross does not compile statistics about the symptoms recorded in the "Incident Description" section of the DCIR. Neither does the Red Cross compile statistics about the number of times, by year, which boxes were checked in that section. Instead, the Red Cross maintains data about the "Final Complication Codes." According to Ms. Dy, during the five years prior to March 30, 2017, the Red Cross had approximately 14,000 DCIRs per year.

**A.      Interrogatory Nos. 1-5**

Plaintiff seeks to compel Defendant to provide a substantive answer to her first five interrogatories, all of which seek DCIR data for the five years ending March 30, 2017. Specifically, Plaintiff asks how many of those forms have an "Incident Description" box checked

---

[1] Plaintiff originally sought to compel an additional answer to a ninth interrogatory, but in its response the Red Cross states the dispute in Interrogatory No. 10 is resolved. In her reply, Plaintiff does not disagree.

for (1), "sharp shooting pain down arm," (2) "tingling and numbness in arm or hand," (3) "very painful venipuncture," and (4) "instructions given by complication code Nerve Irritation (XN)."[2]

B. **Interrogatory Nos. 6-8**

These three interrogatories seek information related to a document Defendant produced in discovery entitled "Work Instructions Managing Nerve Irritation Complication." In each, Plaintiff asks Defendant to "describe and identify what information, medical research or documents the Defendant relied upon as the basis for" one of the steps listed in the document: Step 1—Treat the nerve irritation complication (listing 4 instructions); Step 2—Instruct the donor to do the following (listing five directions); and Step 3—Inform the donor of the following (two items).

III. **Scope of Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. As recently amended, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[3]

---

[2] The five interrogatories seek only four categories of complications or injuries. Interrogatory Nos. 1 and 4 are identical.

[3] Fed. R. Civ. P. 26(b)(1).

Considerations of both relevance and proportionality now govern the scope of discovery.[4] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[5] Information still "need not be admissible in evidence to be discoverable."[6] The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[7]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[8] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[9] In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[10] Conversely,

---

[4] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[5] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[6] Fed. R. Civ. P. 26(b)(1).

[7] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[8] *Id.*

[9] *Id.*

[10] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[11] Relevancy determinations are generally made on a case-by-case basis.[12]

"A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[13] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[14] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[15]

## IV. Analysis

With the legal standards in mind, the Court considers the two groups of interrogatories for which Plaintiff seeks to compel additional answers.

### A. DCIR Data

Defendant objects to Interrogatory Nos. 1-5 as being overly broad, unduly burdensome, and seeking information not proportional to the needs of the case. Defendant explains the

---

[11] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[12] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[13] *Stonebarger v. Union Pac. RR Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10–2514–RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).

[14] *Id.*

[15] *Id.*

requested information is not tracked by the Red Cross, which is a large national organization, and that gathering it would require a broad and extraordinarily burdensome manual effort. Defendant also objects that the interrogatory seeks irrelevant information because the number of occurrences where this box is checked on a DCIR form has no bearing on Plaintiff's alleged injuries. By way of answering, Defendant states that it does not have records of the number by year that each of the listed symptoms was checked on a DCIR form, and therefore it cannot provide the answers Plaintiff seeks.

In her motion, Plaintiff argues that Defendant has not provided a basis for its objections. Defendant's response includes a declaration setting forth the process that would be necessary for the Red Cross to answer these five interrogatories, which would be to perform a manual search of approximately 72,000 DCIRs to count the number of times each of the four symptoms was checked. The declarant, who is the person responsible for compiling, monitoring, and reporting the systemic donor complication rates and recipient adverse reactions, stated that performing such a manual search would require a large staff working exclusively on that task many months to complete it. Coupled with the information that the Red Cross does maintain about the final complication codes—which presumably refers to the conclusion the Red Cross reached after considering the reported symptoms and the donor's medical condition following the blood draw—the Court finds the interrogatories seeking symptoms data from the DCIRs are unduly burdensome and overly broad. In her reply, Plaintiff complains that Defendant had not previously told her that it maintains data about the final complication codes, which Plaintiff appears to concede is of much greater relevance to her claims.[16] But neither does Plaintiff

---

[16] Plaintiff also asserts that until its response to this motion, Defendant had not revealed that "nerve irritation" was one of the final complication codes on the DCIR. But Plaintiff attached to her motion the DCIR document she received from Defendant in discovery, which clearly

indicate that she had ever posed that question to Defendant in discovery.

Plaintiff asserts the information is relevant for two reasons: (1) because Defendant includes a box on its DCIR form that seeks the information, Defendant believes the information is relevant to its business; and (2) it would reveal how often donors report these symptoms and whether Defendant took sufficient steps to prevent them. The Court does not find either reason demonstrates relevance to the claims or defenses in this case. Whether a donor's adverse symptoms are relevant to the Red Cross's business is a given, but nothing connects it to the facts of this case. And the frequency with which donors report these symptoms demonstrates nothing about whether Defendant maintained the proper standard of care for Plaintiff, nor does it provide any information about whether Defendant acted to prevent the symptoms from occurring.

The Court sustains Defendant's objections and denies Plaintiff's motion with respect to Interrogatory Nos. 1-5.

### B. Work Instructions

Defendant objects to Interrogatory Nos. 6-8 as an improper and premature request for expert discovery. Each interrogatory asks Defendant to state the information, medical research, or documents Defendant relied on when it developed Work Instructions for Steps 1, 2, and 3 of Managing Nerve Irritation Complication. Defendant asserts the Work Instruction is based on medical judgment and blood banking standards that it will support with expert testimony. Plaintiff dismisses the objection as frivolous, explaining that the interrogatories ask for the basis of instructions to employees rather than an expert opinion.

The Court rejects Plaintiff's conclusory assertion. While Plaintiff correctly describes the interrogatories as asking for the basis of instructions to employees, Defendant has explained that

---

includes "nerve irritation" as a final complication code in section 11. *See* ECF No. 27 at 74.

the basis is medical judgment and blood banking standards. Defendant has determined it is most appropriate—and perhaps necessary—to explain the basis through the use of expert testimony. And Defendant answered by stating that it will designate experts and provide all required information as required by the Scheduling Order. The Court sustains Defendant's objection and denies Plaintiff's motion with respect to Interrogatory Nos. 6-8.

### C. Verification Page

Plaintiff complains that the verification page does not state that the signer is an authorized officer of the corporation, citing *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D 617, 630 (N.D. Okla. 2009) for the proposition that answers to interrogatories must be "responsive, full, complete and unevasive," and precluding an answering party from limiting answer to "matters within his own knowledge and ignor[ing] information immediately available to him or under his control." But Plaintiff does not explain how complete answers can come only from an "authorized officer." Defendant explains that the Red Cross is a corporation with thousands of employees nationwide, and no individual has personal knowledge of all of the information Plaintiff requested. Accordingly, the signer verified that "the facts and matters stated are true and correct to the best of my knowledge and information and based on information provided to me by others." Plaintiff fails to show that the signature does not satisfy the requirements of Federal Rule of Civil Procedure 33.

The Court denies Plaintiff's motion with respect to the verification page.

Rule 37(a)(5)(B) provides that if a motion to compel is denied, the court must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party who opposed the motion its reasonable expenses and attorney's fees incurred in

making the motion.[17] The court must not order payment, however, if the motion was substantially justified or if other circumstances make an award of expenses unjust.[18] Although the Court struggles to find the motion was substantially justified, the Court will not order payment at this time on the basis that an award of expenses would be unjust because Plaintiff articulated grounds for his motion and provided some support. The Court cautions Plaintiff that future Rule 37 motions will be scrutinized and the provisions of Rule 37(a)(5)(B) will be enforced.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel Discovery (ECF No. 26) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 27th day of January, 2020, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

---

[17] Fed. R. Civ. P. 37(a)(5)(B).

[18] *Id.*